UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMZI MOHAMED ABDALLA,

        Petitioner,        CASE NO. 16-14422
                                         HON. DENISE PAGE HOOD

v.

JEH JOHNSON, et al.,

        Respondents.
_____/

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS [#1]**

**I. BACKGROUND/FACTS**

On December 21, 2016, Petitioner Ramzi Mohamed Abdalla ("Abdalla") filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc # 1) On December 21, 2016, the Court issued an Order Directing Service and Response and staying the removal of Abdalla. (Doc # 4) On January 10, 2017, the Government filed a Response (Doc # 6), and the Court held a Motion Hearing on January 19, 2017. Abdalla filed a Reply on January 19, 2017 (Doc # 12), and the Government filed a Supplemental Brief on January 23, 2017 (Doc # 13).

Abdalla is a native and citizen of Somalia. (Doc # 1, Pg ID 10-11; Doc # 1-1, Pg ID 18-21) On November 16, 2015, Abdalla presented himself at the Hidalgo, Texas port of entry seeking asylum. (Doc # 6-1, Pg ID 56) The United States

1

Citizenship and Immigration Services ("USCIS") Chicago Asylum Office determined that Abdalla expressed a credible fear of persecution in Somalia. *Id.* USCIS issued a Notice to Appear in immigration court in Detroit so that Abdalla could seek asylum before an immigration judge. *Id.* On April 14, 2016, the immigration judge granted Abdalla's application for asylum from the country of South Africa and denied all other applications for relief and protection. *Id.*; Doc # 1-1, Pg ID 16. The Government then filed a motion for reconsideration, arguing that the immigration judge lacked authority to grant Abdalla asylum from South Africa. (Doc # 6-1, Pg ID 56) Subsequently, the immigration judge vacated the prior decision and issued a new order denying asylum and all other applications for relief, as well as ordering Abdalla removed to Somalia under 8 U.S.C. § 1182 as an inadmissible alien. (Doc # 1-1, Pg ID 17) Abdalla reserved appeal, but he subsequently informed the immigration court that he wished to waive his right to appeal the decision. *Id.*, Doc # 1-6, Pg ID 56. The immigration court issued its amended order with an effective date of May 10, 2016, noting that both parties waived appeal—making it a final order of removal. (Doc # 1-6, Pg ID 56)

Abdalla has been detained in the custody of the U.S. Immigration and Customs Enforcement ("ICE") for more than a year since he presented himself in this country seeking asylum, and he has been at the Monroe County Jail for more than eight months since the entry of his final order of removal. (Doc # 1, Pg ID

2

11)    On August 12, 2016, Abdalla was served with a Decision to Continue Detention following an ICE 90-day post order custody review.  (Doc # 1-1, Pg ID 26)  The letter informed Abdalla that ICE was actively working on obtaining a travel document for his removal.  On August 29, 2016, the Embassy of the Federal Republic of Somalia issued a travel document for Abdalla, which recently expired. (Doc # 1-6, Pg ID 57)  On November 15, 2016, Abdalla was served with another Decision to Continue Detention from ICE following a 180-day post order custody review.  (Doc # 1-1, Pg ID 27)  The letter informed Abdalla that ICE was working with the government of Somalia to secure an expected travel document for his removal.

According to a Declaration of Robert Tremont ("Tremont"), an ICE Detention and Deportation Officer,

> [i]n FY 2016, Somalia had been repatriating all of its verified nationals that have been ordered removed from the United States, but in the fall, Somalian authorities adjusted their position on full acceptance of repatriations due to pending elections, promising the charter scheduled would be resumed once the elections were held.  Those elections have been postponed several times and ICE has effected a reduced number of repatriations via commercial air flights in the interim.
>
> Petitioner was tentatively scheduled for removal in December, 2016, via ICE charter flight but that removal was cancelled as the Somali government indicated that the elections had been postponed until January 24, 2017, and they were unable to accommodate most repatriation requests until the conclusion of the elections. Repatriation flights are expected to resume late in January 2017.  At that time, Somali authorities have indicated they will accept back all

3

> verified Somali nationals subject to final removal orders from the United States. There is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, once the elections in Somalia are concluded.

(Doc # 1-6, Pg ID 57)  In a Supplemental Declaration filed on January 23, 2017, Tremont adds:

> There exists a repatriation agreement with the Federal Republic of Somalia ("Somalia").  While such agreement is not in writing, and need not be in writing, Somalia has agreed to accept back all its verified nationals after the Presidential election has taken place.  The Somali Ambassador to the United States has stated that they would renew all expired travel documents and will issue on the 170 cases that are pending with their office.  Pending completion of the Presidential election at the end of this month, January 27, 2017, they are only accommodating repatriation requests for some Somali nationals returning via commercial flight.  After the conclusion of the Presidential election, Somali officials have indicated that charter flights will resume.

(Doc # 13-3, Pg ID 116)

Publicly available news sources confirm that the presidential election in Somalia has been postponed four times over a period of over four months.  In May 2016, the U.S. Department of State issued a press release expressing that "[t]he United States is increasingly concerned about delays in the 2016 Somali electoral process."[1]  Abdalla asserts that Somalia will not accept his deportation because the country is unstable, and the government is very weak and unable to protect its citizens.  (Doc # 1-1, Pg ID 33-34)  Abdalla further asserts, and the Government

---

[1] Press Release, U.S. Dep't of State, United States Concern Over Delays in Somalia's Electoral Process (May 20, 2016), https://www.state.gov/r/pa/prs/ps/2016/05/257577.htm.

does not dispute, that he has cooperated with ICE's efforts to remove him providing all requested documentation; that he has no criminal history; and that he is not a flight risk because, if released on an order of supervision, he would live with his uncle, a U.S. citizen living in Georgia, and would concentrate on working. *Id.* at 34-35

## II. ANALYSIS

Abdalla seeks release from ICE custody under supervision via the instant Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2241. He argues that his detention is unconstitutional because it has been indefinitely extended beyond the detention period authorized by 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act.

Federal courts have jurisdiction to consider challenges to the lawfulness of immigration-related detention in habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). A district court has the power to grant a writ of habeas corpus in accordance with 28 U.S.C. § 2241, which provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless--  (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof . . . .

28 U.S.C. § 2241.

Congress has directed that after entry of a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* at § 1231(a)(2). Congress has further authorized the Attorney General to detain the alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

Detention of an alien, however, may not be indefinite. *Zadvydas*, 533 U.S. at 688. If removal of the alien is not reasonably foreseeable, then continued detention of the alien is unreasonable and not authorized by the statute. *Id.* at 699-700. Detention for a period of up to six months is considered presumptively reasonable. *Id.* at 701. As the Supreme Court has explained,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been

> determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

> Courts have found no significant likelihood of removal in five types of cases:  (1) where the detainee is stateless and no country will accept him;  (2) where the detainee's country of origin refuses to issue a travel document;  (3) where there is no repatriation agreement between the detainee's native country and the United States;  (4) where political conditions in the country of origin render removal virtually impossible;  and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed v. Brott*, No. CIV. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, No. CIV. 14-5000, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (collecting cases).

In this case, the 90-day removal period began on May 10, 2016 and ended on August 8, 2016.  It is undisputed that Abdalla has been detained under 8 U.S.C. § 1231(a)(6) for longer that the six-month presumptively reasonable period under *Zadvydas*.  The Government argues that, nevertheless, Abdalla's detention has not exceeded a period reasonably necessary to secure his removal, and that this case does not fall into any of the aforementioned five types of cases in which courts have found otherwise.

Abdalla replies that there is no significant likelihood of removal in the reasonably foreseeable future because the United States and Somalia do not have a valid repatriation agreement, and because his travel document is invalid given that

7

it was issued without the Somali government's knowledge. Abdalla also makes some arguments that seem to go to the basis of the immigration judge's order denying asylum, but the Court lacks jurisdiction to consider challenges to the order of removal. *See Zadvydas*, 533 U.S. at 687-88.

The Court finds that Abdalla has not shown that there is no significant likelihood that he will be deported in the reasonably foreseeable future. While Abdalla asserts that there is no repatriation agreement and that no valid travel document has ever issued, he provides no evidence to support his contentions. He attaches a Human Rights Watch Country Summary describing conditions in Somalia, but the Country Summary does not discuss repatriation. (Doc # 12, Pg ID 98-103) The documentary evidence submitted by the Government suggests that Abdalla will receive another travel document, and that once the presidential election in Somalia takes place, acceptance of charter repatriation flights from the United States will resume. The Government expects that the elections will take place later this month (though the Court notes that in Tremont's initial Declaration he indicates that the elections will take place on January 24, 2017, yet in his Supplemental Declaration, he indicates that they will take place on January 27, 2017). While the Government cannot provide an exact date for the presidential election or the charter repatriation flight, that does not indicate that Abdalla's detention is indefinite. *See Mulla v. Adducci*, 176 F. Supp. 3d 573, 577 (E.D.

Mich. 2016). The Government notes that the United States currently has diplomatic relations with the Somali government, and Tremont indicates that the United States has a repatriation agreement with the Federal Republic of Somalia (though it has not been reduced to writing). Further, a travel document for Abdalla was issued by the Somali government approximately four months ago (although it has now expired), and Somalia has not refused to reissue the travel document. At oral argument the Government took the position that two additional months is a reasonable amount of time for it to effectuate Abdalla's deportation.

While the Court finds that Abdalla has not, at this point in time, shown that there is a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Court notes that Abdalla may be able to make that showing in the future, as the continued passage of time in detention will cause the "reasonably foreseeable future" "to shrink." *See Zadvydas*, 533 U.S. at 701. If travel arrangements for Abdalla's removal are not forthcoming within the next two months, Abdalla may renew his request for the writ. For now, however, the Court denies Abdalla's request.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Petitioner Abdalla's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc # 1) is DENIED.

9

IT IS FURTHER ORDERED that this action is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this Court's temporary stay of Abdalla's removal is VACATED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: January 24, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 24, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager